Argued and submitted April 24, reversed and remanded for trial
November 13, 1996

## STATE OF OREGON,
### *Appellant,*

*v.*

## DONALD RAY WHITMAN,
### *Respondent.*

### (94-551; CA A88642)

927 P2d 132

Timothy A. Sylwester, Assistant Attorney General, argued the cause for appellant. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Louis R. Miles, Deputy Public Defender, argued the cause for respondent. With him on the brief was Sally L. Avera, Public Defender.

Before Deits, Presiding Judge, and De Muniz and Leeson, Judges.

DEITS, P. J.

## DEITS, P. J.

The state appeals the trial court's granting of defendant's motion to suppress all evidence obtained as a result of an allegedly unlawful stop. Defendant was charged with one count of felony driving while suspended, ORS 811.182, and one count of driving under the influence of intoxicants (DUII), ORS 813.010. We reverse and remand.

Officer Draze was driving his patrol car in downtown Baker City on August 20, 1994. At about 3:00 a.m., he saw a person, later identified as defendant, sitting in the driver's seat of a vehicle parked on Main Street. He noticed that each time that a car passed the vehicle, the person "laid down in the seat as if to hide." Draze thought that this behavior was suspicious, particularly because the vehicle was parked near a bar that had just closed. He testified:

> "I felt this was definitely suspicious activity. * * * [T]hat's a typical activity with subjects who've been drinking. That time of night in the downtown area * * * that's what we commonly refer to as drunk hour. The bars are closing up, and the subjects that have been drinking are attempting to get home. Sometimes this is activity that they do so that we'll go by and not see them, and they're able to sneak home. I thought possibly that this was a drunk driver that's going to try and get home undetected or the subject may have other criminal intent either with the vehicle or in the area."

Draze also said that he thought that the person may have been trying to hot-wire the vehicle or perhaps might be involved in a robbery attempt at the businesses that were just closing.

Draze drove around the block and parked about 15 yards behind defendant's vehicle in a location where he could not be observed by defendant. He then continued to watch him for about 15 minutes, during which time defendant continued to lie down on the seat each time that another vehicle passed by. At one point, defendant started the motor of the vehicle, but turned the engine off when another car approached, and he again ducked down. Eventually defendant started the car and pulled the vehicle out into the street.

Draze followed him in his patrol car. As he pulled out into the street behind defendant's vehicle, he turned on his headlights. Draze testified that, as he began to follow defendant, he noticed that there was a broken taillight on the right rear of defendant's vehicle that caused a white light to appear in the taillight, which is a traffic infraction. After Draze turned on the headlights on his vehicle (not the overhead lights), defendant immediately pulled his car over to the curb. Draze testified that defendant did not pull over in a normal manner, but rather, as soon as Draze turned on the patrol car's headlights, defendant "just shot right to the curb, struck the curb, and tried to exit the vehicle." He said that he thought that defendant's car might go up onto the curb.

After defendant pulled his vehicle over, Draze parked his car behind him. Draze testified that as defendant was getting out of his vehicle, he turned on the overhead lights of the patrol car. He immediately observed that defendant appeared to be intoxicated. He stated:

"[H]e appeared to have some difficulty getting out of the vehicle, and then as he started to walk towards my vehicle, towards the rear of his vehicle[,] I could see that he was having some difficulty walking, staggering and then touched the vehicle a couple of times as if to seek support to keep from staggering further or keep from falling over, or whatever."

Draze then got out of his car, walked up to defendant and told him that the reason for the stop was the defective taillight, as well as the suspicious activity in the car that he had observed. Draze said that as soon as he was close to defendant, he could smell a moderate odor of alcohol. He also testified that as he was talking to defendant at the rear of defendant's vehicle, he could see the defective taillight. Draze then asked defendant for his driver license, at which time defendant admitted that his license was suspended. When Draze asked him to perform some field sobriety tests, he replied "I'm drunk, I was driving so just take me away." Defendant did not dispute Draze's account of the events, except that he testified that his taillight was not broken and that Draze said nothing to him about a broken taillight during the stop.

Defendant was charged with felony driving while suspended, ORS 811.182, and driving under the influence of intoxicants, ORS 813.010. Defendant moved to suppress all evidence obtained during what he alleges was an unlawful stop. The trial court granted the motion. The court based its holding on its conclusions that "A traffic violation did not occur" and "The stop was motivated by the suspicion of a drunk driver for which there was no probable cause."

The state assigns error to the trial court's suppression of the evidence, arguing that the stop was not unlawful. The state contends that the stop was justified based on the officer's belief that a traffic infraction had occurred or, alternatively, based on the officer's reasonable suspicion that defendant was driving under the influence of intoxicants.

■ We first consider the state's argument that Draze had a reasonable suspicion that defendant had committed the crime of DUII at the time that he stopped defendant. A "stop" is defined as "a temporary restraint of a person's liberty by a peace officer lawfully present in any place." ORS 131.605(5). The trial court did not specifically find when the stop occurred in this case. However, defendant argues, and the state agrees, that he was stopped when Draze activated his overhead lights. Assuming that, the critical question then becomes whether, *at that time*, Draze had a "reasonable suspicion" that defendant had committed the crime of DUII.

■ "Reasonably suspects" is defined in ORS 131.605(4) to mean

"that a peace officer holds a belief that is reasonable under the totality of the circumstances existing at the time and place the peace officer acts as authorized in ORS 131.605 to 131.625."

The standard for determining whether an officer had a reasonable suspicion is an "objective test of observable facts" and requires the officer to "point to specific and articulable facts that give rise to a reasonable inference that a person has committed a crime[.]" *State v. Ehly*, 317 Or 66, 80, 854 P2d 421 (1993); *State v. Aguilar*, 139 Or App 175, 912 P2d 379, *rev den* 323 Or 265 (1996).

After considering the totality of the circumstances here, we conclude that, at the time that Officer Draze stopped defendant, he had a suspicion that defendant had committed the crime of DUII and that that suspicion was supported by specific facts and was objectively reasonable.[1] The evidence shows that Draze had a subjective belief that defendant had committed the crime of DUII. He specifically testified that, before he stopped defendant, he suspected that defendant was driving while intoxicated. He said that that was one of the reasons that he followed and eventually stopped defendant. The evidence in the record also supports the conclusion that Draze's belief was based on specific, articulable facts and was objectively reasonable. Draze's observations of defendant's actions, in a car parked outside a bar that had just closed at three in the morning, attempting to avoid being seen by any passing motorists, certainly allows an inference that the person may not have wanted to be observed driving and that the reason might have been that he was intoxicated. That suspicion is further supported by Draze's testimony that, based on his experience, this was fairly typical behavior of someone trying to drive home undetected after becoming intoxicated. Drake's suspicion is also supported by his observation that both times that defendant began to operate the vehicle and another car came along, he immediately stopped the engine or pulled over. Further, the evidence of the abnormal manner in which defendant pulled over his car after Draze turned on his headlights behind him, provides additional support for Draze's suspicion.[2] Defendant argues that

---

[1] The state notes at the outset of this argument that the trial court appeared to believe that it was necessary for the state to prove that the stop for the crime of DUII was supported by probable cause. It is not entirely clear what standard the court was applying. It concluded that the stop was unlawful, stating that it was "motivated by the *suspicion* of a drunk driver for which there was no *probable cause*." In any event, as the defendant acknowledges, the state is correct that the proper standard is reasonable suspicion. ORS 131.615(1); *State v. Sulser*, 127 Or App 45, 48, 871 P2d 126 (1994); *State v. Nelson*, 109 Or App 97, 100, 817 P2d 1344 (1991), *rev den* 312 Or 589 (1992).

[2] Defendant's difficulty in getting out of the car after he pulled over also supports Draze's suspicion. However, we do not consider that evidence in concluding that there were objective facts supporting Draze's suspicion, because it is not entirely clear from the record how much of defendant's behavior Draze observed before he turned on his overhead lights and the stop occurred. The only evidence in the record on this point is Draze's testimony that he had not yet turned on his overhead lights when defendant initially got out of the car. It is not clear, however, how

because the trial court did not accept the officer's testimony that the taillight was broken, it follows that the court must have disbelieved *all* of the officer's testimony and, accordingly, there is no evidence to support the conclusion that Draze had a reasonable suspicion that defendant had committed the crime of DUII at the time that Draze stopped him. Although it is not entirely clear, defendant might be right that the trial court accepted defendant's version of the facts regarding the taillight. The court said:

> "I am not satisfied there was a white light. I don't know if there was or there wasn't. You [the state] have the burden of proof, you haven't met it so far as I'm concerned. The officer did make a stop for which I find he did not have probable cause."

However, even assuming that the above comment by the court is read as finding the officer not credible regarding his observations of the taillight, it is not reasonable to read this comment of the court as finding the officer not credible in any other respect. Further, there is nothing elsewhere in the record that indicates that the court, either expressly or implicitly, found the officer's testimony not credible in any other respect. As noted above, defendant did not dispute any of the evidence of Draze's observations of his actions.

After considering the totality of the circumstances, we conclude that Draze's suspicion that defendant had committed the crime of DUII was objectively reasonable and provided the justification for the stop of defendant. Accordingly, the trial court erred in granting defendant's motion to suppress. In view of our conclusion that the stop was justified based on reasonable suspicion that defendant had committed the crime of DUII, it is unnecessary to address the lawfulness of the stop based on the traffic infraction or the state's alternative argument that the officer did not discover the evidence as a result of a stop.

Reversed and remanded for trial.

---

far defendant walked toward the police vehicle before the overhead lights came on. It is unnecessary to resolve this question, however, because, as we conclude above, even without the evidence of Draze's observations of defendant's behavior after he got out of the car, Draze's suspicion that defendant had committed the crime of DUII was objectively reasonable.